UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
MOON DAL SON,

                              Plaintiff,                         **Memorandum and Order**

   -against-                                           07-CV-4189 (JMA)

DANIEL LOCKWOOD and A. DUIE PYLE,

                              Defendants.
------------------------------------------------------------X
APPEARANCES:

LAMONT K. RODGERS, ESQ.
SACCO & FILLAS, LLP
141-07 20th AVENUE
WHITESTONE, NY 11357
ATTORNEY FOR PLAINTIFF

ROBERT D. ELY, ESQ.
MELITO & ADOLFSEN, P.C.
233 BROADWAY
NEW YORK, NY 10279
ATTORNEY FOR DEFENDANT

**AZRACK, United States Magistrate Judge:**

      This action, brought by Moon Dal Son ("plaintiff") in New York State Supreme Court, was removed to this Court based on diversity jurisdiction, pursuant to 28 U.S.C. § 1441(a) (Dkt No. 1: 10/09/2007 Notice of Removal). By stipulation, the parties consented to have this case presided over by me for all purposes, including entry of judgment (Dkt No. 13: 07/03/08 Consent to Jurisdiction by U.S. Mag. J.). Presently before the Court is defendants' motion for summary judgment, in which defendants argue that plaintiff has: (1) not made out a case of prima facie negligence; and (2) has not demonstrated injuries rising to the level of a "serious injury" as required by sections 5102(d) and 5104(a) of the New York State Insurance Law. For the reasons

1

stated below, the motion is granted in part and denied in part.

## I. BACKGROUND

For purposes of this motion, the facts are drawn from the Rule 56.1 Statements ("56.1 St."), declarations and attached exhibits submitted by the parties.

### A. The Accident

At approximately 8:15 P.M. on the evening of November 21, 2006, a 2005 Volkswagon Beetle operated by plaintiff collided with a tractor-trailer ("Pyle truck") operated by defendant Daniel Lockwood ("Lockwood") and owned by defendant A. Duie Pyle, Lockwood's employer. Both vehicles were traveling northbound on the Clearview Expressway ("Expressway") in Queens County. Following the collision, plaintiff's vehicle struck the rear portion of a tractor-trailer ("Webster truck") operated by Vinny Fotiadis ("Fotiadis") and owned by Webster Trucking Company (both non-parties to this action). As outlined below, the parties dispute significant details of the accident.

At his deposition, plaintiff testified that he was travelling in the center lane of the Expressway when his vehicle was suddenly struck in the rear by a truck. (Son Dep. 28:23-29:24.) Immediately prior to the accident, plaintiff observed the Pyle truck traveling behind him in the center lane. (Id. at 30:4-8.) Plaintiff further testified that, following the impact, he stopped his vehicle in the center lane of the Expressway and immediately lost consciousness. (Id. at 30:24-31:21.)

By contrast, Lockwood testified that he observed plaintiff traveling in the right lane of the Expressway at the time of the accident. (Lockwood Dep. 29:5-7; 30:18-21.) According to Lockwood, plaintiff's vehicle veered from the right lane into the center lane of the Expressway, struck his trailer, then returned to the right lane and collided with the Webster truck. (Id. at

2

23:11-19.) Following the collision, plaintiff's vehicle came to a stop "underneath the left side of the Webster trailer." (Id. at 45:1-6.)

Fotiadis submitted an affidavit in support of defendants' motion for summary judgment which substantially corroborated Lockwood's deposition testimony. (Defs.' Notice of Mot. Ex. H.) Fotiadis states that, due to an unrelated traffic accident in front of him, he completely stopped the Webster truck in the right lane of the Expressway. (Id. at ¶¶ 3-4.) He further states that he observed plaintiff veer out from behind him in the right lane of the Expressway, travel into the center lane, strike the Pyle truck and finally careen into the rear area of the Webster truck. (Id. at ¶¶ 4-5.)

A report prepared by a New York City Police Department ("NYPD") officer at the scene of the accident reflects the dispute between the parties. (Defs.' Notice of Mot. Ex. G.) According to the report, Lockwood stated to the NYPD officer that his right tire was struck by plaintiff's vehicle; Fotiadis reported that plaintiff's vehicle struck the Webster truck after colliding with the Pyle truck; and plaintiff reported that he did not know what had happened. (Id.) The NYPD officer did not witness the accident. (Id.)

B. **Plaintiff's Injuries**

In an affidavit submitted to the Court, plaintiff alleges he sustained various injuries to his neck, back and right knee as a result of the above-described motor vehicle accident. (See Ex. D to Declaration of Lamont K. Rodgers in Opposition to Defendants' Motion for Summary Judgment) ("Rodger's Decl.") According to plaintiff, he is no longer able to engage in normal daily activities and "cannot walk, sit, stand, drive for long periods, or perform household chores." (Id.)

3

Plaintiff testified at his deposition that following the accident he was confined to his bed for one month and was unable to leave his home for approximately two months. (Son Dep. 53:15-54:3.) Plaintiff further stated that since the accident he suffers from dizziness and ringing in both ears. (Id. at 78:4-25.) He also suffers from sharp pains in his neck, back, right knee and shaking in the upper part of his body. (Id. at 80:20-84:6.) Finally, plaintiff maintains that as a result of his injuries, he was unable to work for a three-month period immediately following the accident. (Id. at 85:10-12.)

C. **Plaintiff's Medical Treatment and Examinations**

Following the accident on November 21, 2006, plaintiff was transported by ambulance to Long Island Jewish Medical Center, where he was treated and released. (Pl.'s 56.1 St. ¶ 19; Son Dep. 36:16-19.) X-rays taken at the hospital demonstrated a "normal cervical spine" and "normal right knee." (Defs.' Notice of Mot. Ex. J)

On November 27, 2006, plaintiff consulted with Benigno R. Sales, Jr., M.D. (Pl.'s 56.1 St. ¶ 20.) In his "initial consultation" report, Dr. Sales stated that plaintiff suffered post-traumatic cervical sprain radiculopathy; post-traumatic lumbrosacral sprain radiculopathy; knee sprain; and post-traumatic headache syndrome. (Defs.' Notice of Mot. Ex. K.) Dr. Sales prescribed out-patient physical therapy and referred plaintiff for diagnostic testing. (Id.)

On January 4, 2007, John T. Rigney, M.D., conducted magnetic resonance imaging ("MRI") tests of plaintiff's cervical and lumbar spines. (Defs.' Notice of Mot. Ex. L.) Dr. Rigney concluded that the MRI results of plaintiff's cervical spine demonstrated posterior herniations at C2-C3, C3-C4, C4-C5, C5-C6 and C6-C7 with cord compression at C3-C4. (Id.)

Regarding plaintiff's lumbar spine, Dr. Rigney concluded that the MRI results demonstrated mild straightening of curvature and a slight-to-mild posterior bulge at L4-L5. (Id.)

On January 24, 2007, Dr. Sales again reported that plaintiff suffered posterior herniation at the cervical spine with cord compression at C3-C4; post-traumatic cervical sprain radiculopathy; post-traumatic lumbrosacral sprain radiculopathy; right knee sprain; and post-traumatic headache syndrome. (Defs. Notice of Mot. Ex. K.) Dr. Sales recommended a program of continued physical therapy. (Id.) At his deposition, plaintiff testified that he continued regular therapeutic treatment for approximately six or seven months following the accident.[1] (Son Dep. at 62:7-9.) Plaintiff further testified that he discontinued treatment when his insurance company would no longer pay the costs of the office visits. (Id. at 62:19-63:3; see also Rodger's Decl. Ex. F.)

On February 1, 2007, Dr. Rigney conducted x-ray tests of plaintiff's brain and right knee, as well as MRI tests of his brain. (Defs.' Notice of Mot. Ex. L; Rodger's Decl. Ex. B.) Dr. Rigney reported that the x-ray of plaintiff's right knee demonstrated a mild joint compartment narrowing without evidence of recent injury, but that the MRI results indicated a tearing of the body of the lateral meniscus. (Id.) The MRI results of plaintiff's brain indicated minor sinus issues. (Defs.' Notice of Mot. Ex. L.) On February 13, 2007, Bojun Chen, M.D., Phd., conducted an electrodiagnostic ("EMG") test and reported results consistent with right C5-C6 radiculopathy superimposed with mild carpal tunnel syndrome. (Rodger's Decl. Ex. B.)

---

[1] Medical records submitted by plaintiff in opposition to defendants' motion indicate that he visited Dr. Sales on more than fifty occasions during the period November 27, 2006 through May 11, 2007. (See Rodger's Decl. Ex. E.) On nearly all occasions, plaintiff was treated with "hot/cold pack", "ultrasound", "therapeutic exercise" and "manual therapy". (Id.)

5

On April 3, 2008, A. Robert Tantleff, M.D., reviewed plaintiff's MRI results on behalf of defendants. (Defs.' Notice of Mot. Ex. M.) Dr. Tantleff's findings were in substantial agreement with Dr. Rigney's report. (Id.) However, Dr. Tantleff concluded that the condition of plaintiff's cervical and lumbar spines was consistent with plaintiff's age and not causally related to the November 21, 2006 accident. (Id.)

On May 22, 2008, plaintiff was examined on behalf of defendants by William B. Head, Jr., M.D., a neurologist. (Defs.' Notice of Mot. Ex. N.) Range of Motion ("ROM") tests indicated that plaintiff's cervical and lumbar flexion/extension results were within normal ranges. (Id.) Dr. Head's testing revealed no objective clinical sign of herniated discs nor cervical or lumbar radiculopathy. (Id.) Dr. Head concluded that the November 21, 2006 accident did not result in any permanent neurological condition or disability and that no neurological restriction effected plaintiff's "ability to earn a livelihood or to engage in his usual and customary activities." (Id.)

On August 28, 2008, Dr. Sales examined plaintiff for a final time. (Rodger's Decl. Ex. C.) Dr. Sales reported that ROM tests of plaintiff's cervical and lumbar spines resulted in flexion/extension performance significantly below normal ranges. (Id.) Dr. Sales opined that plaintiff's injuries were causally related to the November 21, 2006 accident and that plaintiff "remains to be temporarily and partially incapacitated." (Id.)

## II. DISCUSSION

The standard for granting summary judgment is well established. Summary judgment should be granted only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material

fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986), Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 585-87 (1986). The burden is upon the moving party to demonstrate that "no genuine issue of material fact exists," Marvel Characters v. Simon, 310 F.3d 280, 286 (2d Cir. 2002) (citations omitted), but "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986) (emphasis in original). "An issue of fact is 'material' for these purposes if it 'might affect the outcome of the suit under the governing law," while "[a]n issue of fact is 'genuine' if 'the evidence is such that a reasonable jury could return a verdict for the non-moving party." Konikoff v. Prudential Ins. Co. of Am., 234 F.3d 92, 97 (2d Cir. 2000) (quoting Anderson, 477 U.S. at 248).

In determining whether any material facts are in dispute, the court "must examine the evidence in the light most favorable to, and draw all inferences in favor of, the non-movant[.]" Marvel Characters, 310 F.3d at 286 (citing Matsushita, 475 U.S. at 587; Weinstock v. Columbia Univ., 224 F.3d 33, 41 (2d Cir. 2000)). To defeat a properly supported motion for summary judgment, "the non-moving party must come forward with 'specific facts showing that there is a *genuine issue for trial*.'" Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e)) (emphasis in original). The non-moving party, however, "must do more than simply show that there is some metaphysical doubt as to the material facts." Id. at 586 (citations omitted). Mere conclusory allegations, speculation or conjecture will not avail a party resisting summary judgment. See Shannon v. New York City Transit Auth., 332 F.3d 95, 99 (2d Cir. 2003) (citation omitted). The non-moving party must come forth with "significant probative evidence"

7

demonstrating that a factual dispute does in fact exist. Anderson, 477 U.S. at 249 (citation omitted). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Id. at 249-50 (citations omitted).

However, "[t]he issue of material fact required by Rule 56(c) to be present to entitle a party to proceed to trial is not required to be resolved conclusively in favor of the party asserting its existence; rather, all that is required is that sufficient evidence supporting the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial.'" Id. at 248-49 (quoting First Nat'l Bank of Arizona v. Cities Service Co., 391 U.S. 253, 288-89 (1968)). In deciding a motion for summary judgment, the court's function is not to weigh the evidence or resolve issues of fact, but only to determine whether "there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." Anderson, 477 U.S. at 250; see also Lucente v. IBM, 310 F.3d 243, 254 (2d Cir. 2002).

### A. **Prima Facie Negligence**

Jurisdiction in this case is based on diversity of citizenship; thus New York substantive law governs. Erie R.R. Co. v. Tompkins, 304 U.S. 64 (1938). Generally, New York requires a plaintiff in a negligence action to establish that the defendant owed it a cognizable duty of care, that the defendant breached such duty, and that the plaintiff suffered damages as a proximate result of this breach. Solomon v. City of New York, 66 N.Y.2d 1026, 1027 (1985). It is well established that a driver has a duty "to see that which she should have seen through the proper use of her senses," Larsen v. Spano, 827 N.Y.S.2d 276, 278 (2d Dep't 2006), and breaches his

8

duty of care when he fails to see that which he should have seen. See Spatola v. Gelco, 773 N.Y.S.2d 101 (2d Dep't 2004).

It is also well established in New York that "[d]ue to their fact-dependent nature, personal injury claims based on negligence must usually be resolved by the fact-finder." Duncalf v. Swamsington, No. 05 Civ. 7020 (PAC), 2007 WL 2387968 at *2 (S.D.N.Y. Aug. 21, 2007) citing Derdiarian v. Felix Contracting Corp., 51 N.Y.2d 308, 315 (1980). Nevertheless, summary judgment may be appropriate in cases where "the facts clearly point to the negligence of one party without any fault or culpable conduct by the other party." Spence v. Lake Service Station, Inc., 788 N.Y.S.2d 337, 229 (1st Dep't 2004) (internal quotation omitted).

In this case, both parties assert that the opposing party's negligent conduct caused the accident. Defendants principally argue that plaintiff violated section 1128(a) of the New York Vehicle and Traffic Law by veering from the right lane of the Expressway and colliding with Pyle truck being operated in the center lane.[2] Plaintiff, in turn, expressly denies he acted negligently and alleges that the Pyle truck suddenly struck him from behind while he was traveling in the center lane.

"Sharp conflicts of evidence [. . .] regarding the circumstances of a vehicle collision present questions of fact and credibility that properly belong to the jury." Mangual v. Pleas, No. 02 Civ. 8311 (CBM), 2004 WL 736817 at *3 (S.D.N.Y. April 6, 2004) citing Campell v. Driscoll, 593 N.Y.S.2d 549, 550 (2d Dep't 2003). As outlined above, nearly all of the factual circumstances regarding the collision between plaintiff's vehicle and the Pyle truck are sharply

---

[2] In their briefs, defendants also advance the argument that plaintiff has failed to present evidence indicating that he was struck by a vehicle being driven by Lockwood. However, this point is conceded in defendants' Rule 56.1 Statement and in Lockwood's deposition testimony. See Defs.' 56.1 St. at ¶ 1; Lockwood Dep. at 22:3-25.)

9

disputed by the parties. See supra, pp. 2-3. Accordingly, defendants' motion for summary judgment on liability is denied.

B. **The New York No-Fault Law's "Serious Injury" Requirement**

Plaintiff's claims are governed by the New York "No-Fault Law"[3] which precludes recovery for non-economic loss arising out of negligence in the use or operation of an automobile, except in cases where the claimant has suffered a serious injury. N.Y. Ins. Law § 5104(a). A "serious injury" is defined as: (1) death; (2) dismemberment; (3) significant disfigurement; (4) a fracture; (5) loss of a fetus; (6) permanent loss or use of a body organ, member, function or system; (7) permanent consequential limitation of use of a body organ or member [hereinafter "permanent consequential limitation"]; (8) significant limitation of use of a body function or system [hereinafter "significant limitation"]; or (9) a medically determined injury or impairment of a non-permanent nature which prevents the injured person from performing substantially all of the material acts which constitute such person's usual and customary daily activities for not less than ninety days during the one hundred eighty days immediately following the occurrence of the injury or impairment [hereinafter "90/180 impairment"]. See N.Y. Ins. Law § 5102(d). Plaintiff contends that his injuries are "serious" within the meaning of categories (7) through (9). (Pl's. Verified Compl. ¶ 21; Pl's. Mem. in Opp'n ¶ 30).

New York State's "No-Fault Law" was enacted with the "objective of promoting prompt resolution of injury claims, limiting the cost to consumers and alleviating unnecessary burdens on the courts." Pommells v. Perez, 4 N.Y.3d 566, 570-71 (2005). The No-Fault Law's threshold

---

[3] Technically, the "Comprehensive Motor Vehicle Insurance Reparations Act," Article 51 of the New York State Insurance Law. See N.Y. Ins. Law § 5101.

10

requirement of "serious injury" was intended "to weed out frivolous claims and limit recovery to significant injuries." Toure v. Avis Rent A Car Sys., 98 N.Y.2d 345, 350 (2002) (citing Dufel v. Green, 84 N.Y.2d 795, 798 (1995)). Accordingly, the New York Court of Appeals has "required objective proof of a plaintiff's injury in order to satisfy the statutory serious injury threshold; subjective complaints alone are not sufficient." Toure, 98 N.Y.2d at 350 (citations omitted).

In the summary judgment setting, the defendant bears the initial burden of establishing a prima facie case that the plaintiff has not sustained a "serious injury" as defined in section 5102(d) of the No-Fault Law. See Gaddy v. Eyler, 79 N.Y.2d 955, 956-57 (1992). Once the defendant has established a prima facie case, the burden shifts to the plaintiff to come forward with competent evidence sufficient to raise a triable issue of fact. Id. at 957. The court must determine as a threshold question "whether the evidence would warrant a jury finding that the injury falls within the class of injuries that, under no-fault, should be excluded from judicial remedy." Licardi v. Elliot, 57 N.Y.2d 230, 238 (1982).

Defendants in this case have satisfied their burden of establishing a prima facie entitlement to summary judgment through their submission of affirmed reports from a radiologist, Dr. A. Robert Tantleff, and a neurologist, Dr. William B. Head, Jr. (Defs.' Notice of Mot. Ex. M-N.) Dr. Tantleff's and Dr. Head's reports are discussed above, and, taken together, demonstrate that plaintiff's injuries are not "serious" within the meaning of the No-Fault Insurance Law. See supra, p. 6.

The burden then shifted to plaintiff to establish that he sustained a "serious injury" as defined in section 5102(d). In response to defendants' motion, plaintiff submitted an affidavit detailing his injuries as well as a final report from his primary physician, Dr. Sales, which included ROM test results of plaintiff's cervical and lumbar spine. (Rodger's Decl. Ex. C.)

Plaintiff also submitted numerous progress reports which detailed his post-accident history of physical therapy. (Rodger's Decl. Ex. E.) Finally, plaintiff submitted reports from Dr. Rigney, a radiologist, and Dr. Chen, a neurologist, which included the results of EMG examinations. See supra, p. 5.

### 1. **Permanent Consequential Limitation and Significant Limitation**

In evaluating both "permanent consequential limitation" and "significant limitation," the New York Court of Appeals has held that "[w]hether a limitation of use or function is 'significant' or 'consequential' . . . relates to medical significance and involved a comparative determination of the degree or qualitative nature of an injury based on the normal function, purpose and use of the body part." Dufel, 84 N.Y.2d at 798 (citations omitted). A significant limitation must be something more than a "minor, mild or slight limitation of use." Licardi, 57 N.Y.2d at 236; see also Thomas v. Torres, No. 05-CV-1488 (RER), 2006 U.S. Dist. LEXIS 74002, at *11 (E.D.N.Y. Oct. 11, 2006) (citing Licardi v. Elliot). Furthermore, "[a] 'permanent consequential limitation' requires a greater degree of proof than a 'significant limitation'. As only the former requires proof of permanency." Altman v. Gassman, 608 N.Y.S.2d 651 (1st Dep't 1994) (citations omitted); see also Waldman v. Atlantic-Heydt Corp., No. 04-CV-2154 (SJ), 2006 WL 2010783, at *4 (E.D.N.Y. July 14, 2006) (citing Altman v. Gassman).

Therefore, to establish a "serious injury" under both of these definitions, plaintiff must submit quantitative evidence from an expert with respect to diminished range of motion or an expert's qualitative assessment, based on objective evidence, comparing his present limitations to the normal function, purpose and use of the affected body organ, member, function, or system.

In this case, plaintiff has failed to present evidence supporting the conclusion that he suffers from a permanent consequential limitation. Indeed, plaintiff's treating physician reports

12

that plaintiff is only "temporarily and partially incapacitated." (See Rodger's Decl. Ex. C.) As explained above, in order to establish a 'permanent consequential limitation' within the meaning of the No-Fault Insurance Law, plaintiff must submit evidence demonstrating that his injuries are permanent. Altman, 608 N.Y.S.2d at 651. Here, plaintiff has offered no evidence of permanent injury. Accordingly, defendants' summary judgment motion on this ground is granted.

However, objective findings support the conclusion that plaintiff has a significant limitation in the mobility of his lumbar and cervical spines. Plaintiff submitted an affirmed final report from Dr. Sales which specified decreased range of motion in his cervical and lumbar spines, along with evidence of disc herniations and bulges confirmed by multiple MRIs. See supra p. 6; Rodger's Decl. Ex. C; see also Roman v. Fast Lane Car Serv., Inc., 846 N.Y.S.2d 613 (2d Dep't 2007) ("The mere existence of a herniated or bulging disc is not evidence of a serious injury in the absence of objective evidence of the extent of the alleged physical limitations resulting from the disc injury and its duration.") (citations omitted). Based on the results of MRI, EMG and ROM studies, his own testing and plaintiff's subjective complaints, Dr. Sales opined that the various injuries discussed above are causally related to the motor vehicle accident of November 21, 2006. (Rodger's Decl. Ex. C.) Construed in the light most favorable to plaintiff, this evidence is sufficient to raise a triable issue of fact with regard to whether the accident caused a significant limitation of plaintiff's use of his cervical and lumbar spines. See Clerviox v. Edwards, 781 N.Y.S.2d 690 (2d Dep't 2004) (citing Toure, 98 N.Y.2d 345; Acosta v. Rubin, 768 N.Y.S.2d 642 (2d Dep't 2003); see also Stein v. Bentor, No. 03-CV-5488 (ARR), 2005 WL 2244831, at *9 (E.D.N.Y. Sept. 15, 2005).

### 2. 90/180 Impairment

Finally, plaintiff alleges a "serious injury" because he suffered a "medically determined

13

injury" that prevented him from performing "substantially all of the material acts" of his customary daily activities for at least 90 out of the first 180 days immediately following the accident of November 21, 2006. See N.Y. Ins. Law § 5102(d). Evidence that establishes only a "slight curtailment" of the plaintiff's usual activities does not satisfy this statutory threshold. See Licardi, 57 N.Y.2d at 236 ("the words 'substantially all' should be construed to mean that the person has been curtailed from performing his usual activities to a great extent rather than some slight curtailment.").

Plaintiff testified in his deposition that he was unable to perform his usual and customary activities, citing problems exercising, running, long-distance walking and going to the gym. (Son Dep. 84:22-85:3.) He also testified that he was unable to work for a three month period following the accident. (Id. at 85:10-12.) In addition to his deposition testimony, plaintiff submitted a sworn affidavit which states that he missed three months of work as a result of his injuries, that he currently is unable to engage in "sports, exercising, running, long distance walking and going to the gym" and that he is also unable to "walk, sit stand, drive for long periods, or perform household chores." (See Rodger's Decl. Ex. D.)

Though plaintiff presents testimony that he missed work and refrained from his usual and customary activities for the necessary time period, in order to survive a motion for summary judgment, he must also provide competent medical testimony that he was unable to do so because of the injury itself. See e.g., Jackson v. New York City Trans. Auth., 708 N.Y.S.2d 469, 470 (2d Dep't 2000) ("[P]laintiff's self-serving affidavit stating that she was unable to return to work . . . , without a physician's affidavit substantiating the existence of a medically determined injury which caused the alleged limitation of her activities, was insufficient to create a triable issue of fact as to her inability to perform substantially all of her daily activities for not less than

90 of the first 180 days subsequent to the accident."; see also Below v. Randall, 658 N.Y.S.2d 767, 768 (3d Dep't 1997) ("Even were we to accept that plaintiff could not engage in certain activities and sports, there has been no showing that these restrictions were medically indicated . . ."). The evidence submitted by plaintiff in this case is insufficient to meet this burden and no triable issue of fact exists on this ground even when the evidence is viewed in the light most favorable to plaintiff. Accordingly, defendants' summary judgment motion on this ground is granted.

### 3. Gap in Treatment

In their reply brief, defendants contend that plaintiff has failed to adequately explain what amounts to approximately a fifteen-month gap between plaintiff's treatment and subsequent re-examination. The New York Court of Appeals has explained that, "even where there is objective proof, when additional contributory factors interrupt the chain of causation between the accident and claimed injury – such as a gap in treatment, an intervening medical problem or a preexisting condition – summary dismissal of the complaint may be appropriate." Pommells, 4 N.Y.3d at 572. The Court further held that while "the law surely does not require a record of needless treatment in order to survive summary judgment" where there has been a gap in or cessation of treatment, a plaintiff "must offer some reasonable explanation for" that gap or cessation. Id. at 574.

In this case, plaintiff ceased medical treatment approximately six or seven months after the accident, seeking no other treatment until he visited Dr. Sales approximately one month after defendants filed their summary judgment motion. However, in both his deposition testimony and in his affidavit, plaintiff stated that he discontinued physical therapy due to financial constraints and the termination of no-fault benefits. (See Rodger's Decl. Ex. D; Son Dep. 75:8-

15

10.) As courts have noted, "a plaintiff should be free to explain a gap in treatment based on impecuniousness." Panchmia v. Tauber, 775 N.Y.S.2d 490, 494 (N.Y. Civ. Ct. 2004); Ahmed v. Kahn, 798 N.Y.S.2d 707 (N.Y. App. Term 2004) (finding the gap in treatment to have been adequately accounted for where "plaintiff explained that she had to stop treatment . . . because her no-fault insurance ran out and she could not afford to pay for it herself."). Accordingly, the Court finds plaintiff's explanation sufficient to defeat summary judgment.

### III. CONCLUSION

For the reasons stated above, defendants' motion is granted in part and denied in part. It is granted with respect to plaintiff's claim of serious injury due to permanent consequential limitation of use of a body organ or member and inability to perform substantially all of his usual and customary activities for 90 of the 180 days following the accident. It is denied with respect to plaintiff's claim of serious injury based on a significant limitation of the use of his cervical and lumbar spines. Defendants' motion with respect to liability is also denied and the stay of participation in the Court's arbitration program is vacated.

SO ORDERED.

Dated: Brooklyn, New York  
      November 26, 2008

/s/  
JOAN M. AZRACK  
UNITED STATES MAGISTRATE JUDGE